IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–02428–EWN

IN RE:

MILE HIGH CAPITAL GROUP, LTD.,

Debtor.

RODGER DASHOW,

Appellant,

v.

JOHN C. SMILEY,

Appellee,

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a bankruptcy appeal. Appellant Rodger Dashow appeals an order of the bankruptcy court approving a settlement between Appellee John C. Smiley and Replacement Property Solutions, Inc. ("RPS"). Jurisdiction is based on 28 U.S.C. § 158 (2006).

**FACTS**

On October 28, 2005, the District Court for the City and County of Denver appointed a receiver to operate Mile High Capital Group, Ltd. ("Debtor"). (R. on Appeal, Docket No. 1 at 4 [Vol. Pet.].) On January 13, 2006, the receiver caused Debtor to file a voluntary Chapter 11 petition. (*Id.*, Docket No. 1 at 1–3 [Vol. Pet.].) On January 23, 2006, the bankruptcy court appointed Appellee as Debtor's Chapter 11 trustee. (*Id.*, Docket No. 36 [Order Approving Appointment].)

On February 16, 2006, Appellee filed an adversary complaint against RPS, seeking to avoid certain pre-petition transfers of assets Debtor made to RPS, pursuant to the trustee's rights under 11 U.S.C. §§ 544, 547, 548. (*Id.*, Docket No. 97 at 8–11 [Adv. Compl.].) For the purposes of his claims under section 547, Appellee alleged that RPS was an "insider," as that term is defined in 11 U.S.C. § 101(31).[1] (*Id.*, Docket No. 97 at 8–9 [Adv. Compl.].) Appellee also requested that: (1) certain liens held by RPS be preserved for the benefit of the estate; and (2) the court enter an order requiring RPS to make an accounting of its complete business relationship with Debtor. (*Id.*, Docket No. 97 at 12–13 [Adv. Compl.].) Subsequently, Appellee and RPS entered into settlement negotiations. (*Id.*, Docket No. 639 at 39–41 [11/7/06 Hr'g Tr.].)

On March 22, 2006, the district court for the City and County of Denver granted a stipulated request for an order of preliminary injunction barring RPS and its principals from, *inter*

---

[1]In relevant part, the code defines an insider of a debtor corporation as "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; . . . or (vi) relative of a director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B) (2006).

*alia*, disposing of any of RPS's assets (the "State Injunction"). (Appellant's Br., Ex. H [State Inj.] [filed Feb. 6, 2007] [hereinafter "Appellant's Br."].) The State Injunction arose out of an ongoing investigation of RPS by the Colorado Division of Securities. (*See id.*)

In July 2006, Appellee and RPS entered into a settlement agreement (the "Settlement") resolving Appellee's claims. (R. on Appeal, Docket No. 639 at 39–41 [11/7/06 Hr'g Tr.].) In the Settlement, the parties stipulated to entry of judgment on all of Appellee's claims except the claim for an accounting, which the parties agreed to dismiss without prejudice. (*Id.*, Docket No. 456, Ex. A at 2–3 [Settlement].) The Settlement left RPS free to file claims against the bankruptcy estate. (*Id.*, Docket No. 639 at 24 [11/7/06 Hr'g Tr.].)

On July 25, 2006, Appellee and RPS filed a motion to approve the Settlement. (*Id.*, Docket No. 415 [Mot. to Approve Settlement].) On August 17, 2006, Appellant filed an objection to the Settlement. (*Id.*, Docket No. 456 [Appellant's Obj.].) Appellant explained that he had claims against RPS and asserted that the Settlement "does not identify any treatment of the filed claims of RPS, *e.g.*, waiver allowance." (*Id.*, Docket No. 456 at 2–3 [Appellant's Obj.].) Appellant further contended that: (1) Debtor and RPS "are *in pari delicto* outside of property for asserted avoidance claims, such outside claims appearing to be included in the Settlement;" (2) "[w]ith separate creditor claims, RPS is not subject to reverse alter ego piercing by [Appellee];" and (3) the State Injunction precludes RPS from entering into any agreement to transfer its assets. (*Id.*, Docket No. 456 at 3–4 [Appellant's Obj.].)

On August 23, 2006, a Colorado state grand jury presented an indictment against principals of Debtor and RPS for a conspiracy to commit theft and securities fraud. (*See* Appellant's Br., Ex. B [Indictment].)

On November 7, 2006, the bankruptcy court held a hearing regarding Appellant's objections, at which Appellee was the sole witness called. (R. on Appeal, Docket No. 639 [11/7/06 Hr'g Tr.].) Although Appellant did not appear at the hearing, his counsel submitted certain exhibits and cross-examined Appellee. (*See id.*)

One of the exhibits discussed — but not introduced into evidence — was a "voting trust" document that counsel for Appellant mentioned in his opening argument. (*Id.*, Docket Nos. 639 at 19–20 [11/7/06 Hr'g Tr.], 540 at 2 [11/7/06 Hr'g Minutes].) Appellant argued that this document demonstrated that Debtor "ha[d] complete control and domination over RPS" such that the two were *in pari delicto*. (*Id.*) When questioned about the purported voting trust, Appellee testified:

> I don't think there is a voting trust. There are documents which purport to create a voting trust . . . . Those documents were never signed by a representative of [Debtor]. The trustee, under that voting trust, is not [Debtor]. . . . My understanding in reviewing those documents and further investigating the[ir] validity . . . is that there never was a voting trust for RPS. . . . I've confirmed with the former shareholder and president of [Debtor] that the document was not executed by a representative of [Debtor].

(*Id.*, Docket No. 639 at 36–37 [11/7/06 Hr'g Tr.].)

Appellant tried to introduce into evidence an exhibit purporting to be the State Injunction. (*Id.*, Docket No. 639 at 97–98 [11/7/06 Hr'g Tr.].) Appellee objected to admission of the exhibit because it was not a certified copy, and the bankruptcy court sustained the objection. (*Id.*,

Docket No. 639 at 98 [11/7/06 Hr'g Tr.].) Appellant did elicit the following testimony from Appellee:

> Q: [D]id you make any effort to obtain relief from the [State Injunction] freezing assets . . . of RPS?
> A: I did not.
> Q: Why not?
> A: I don't believe I needed to.
> * * *
> Q: You don't think orders from the Denver District Court are binding on you?
> A: I'm not aware of any court order from the Denver District Court which would prohibit me from doing — well specifically from entering into the [S]ettlement . . . .
> Q: How about [RPS's president]? Does it prohibit him?
> A: I don't know the answer to that question.

(*Id.*, Docket No. 639 at 99 [11/7/06 Hr'g Tr.].) On redirect, Appellee testified as follows:

> Q: And did the [Colorado] Division of Securities receive notice of the [S]ettlement . . . ?
> A: My understanding is that it did.
> Q: And have they indicated either formally or informally any sort of objection to the [] [S]ettlement?
> A: Nothing.
> Q: And have you and a representative of [Debtor] been in relatively constant contact with the Division of Securities over that time period?
> A: There's [sic] been extensive communications . . . with the Division of Securities throughout this entire case.
> Q: And has — throughout that process, both [sic] either by pleading or letter or verbally has there been any indication from the Division of Securities that they oppose the [] [S]ettlement?
> A: None whatsoever.

(*Id.*, Docket No. 639 at 106–07 [11/7/06 Hr'g Tr.].) After this testimony, argument was heard, and the court took the matter under advisement. (*Id.*, Docket No. 639 at 116 [11/7/06 Hr'g Tr.].)

On November 21, 2006, the bankruptcy court issued a written order approving the Settlement. (*Id.*, Docket No. 568 [Order].) Therein, the court explained:

> [A] claim was filed in this bankruptcy case on August 29, 2006, on [Appellant's] behalf . . . . It is an unsecured claim in the amount of $300,449.00. In addition, [Appellant] has filed a pleading, which asserts that two claims filed by [RPS] have been transferred to him by operation of a garnishment that he served on [Appellee]. As a judgment creditor of RPS, [Appellant] served the garnishment, presumably, in an effort to capture any sums that would otherwise be payable to RPS if its claims are ultimately allowed.

(*Id.*, Docket No. 568 at 1 [Order].) The court proceeded to summarize the crux of Appellant's objection: "the Settlement [] is an illegal agreement." (*Id.*, Docket No. 568 at 3 [Order].) The court elaborated: "[t]he argument is predicated on the allegation that, prior to the initiation of the bankruptcy proceedings, the pre-petition Debtor dominated and controlled the affairs of RPS by means of a voting trust agreement." (*Id.*) The court further distilled Appellant's argument: "it would be unfair to creditors of RPS to allow [Appellee's] avoidance action to deplete the pool of assets available to satisfy the claims of RPS creditors, where Debtor's wrongdoing is responsible for the transfers that [Appellee] seeks to avoid because [he] stands in the shoes of [] Debtor." (*Id.*) The court rejected this argument on two grounds: (1) Appellant's evidence fell far short of proving that Debtor dominated and controlled RPS; and (2) the *in pari delicto* theory has no applicability where a trustee proceeds under his avoidance powers, because, under such circumstances, the trustee acts on behalf of all the debtor's creditors and does not merely step into the debtor's shoes. (*Id.*, Docket No. 568 at 4 [Order].)

The court also noted "[a] somewhat different version of [Appellant's] *in pari delicto* argument is that, because the pre-petition Debtor dominated and controlled the actions of RPS,

[Appellee's] complaint is analogous to a reverse alter-ego piercing of RPS, which is not viable under Colorado law." (*Id.*) The court rejected this argument on two grounds: (1) Appellant's "failure to prove the corporate domination that is the factual foundation of his argument;" and (2) Appellee "simply seeks to avoid transfers that are directly avoidable under . . . the [b]ankruptcy [c]ode." (*Id.*, Docket No. 568 at 5 [Order].)

Finally, the court considered the Settlement. (*Id.*) The court determined that it constituted a fair and equitable agreement that was in the best interests of the estate. (*Id.*) Accordingly, the court granted Appellee's motion to approve the Settlement. (*Id.*, Docket No. 568 at 6 [Order].)

On December 1, 2006, Appellant filed a timely notice of appeal. (Notice of Appeal [filed Dec. 1, 2006].) On February 6, 2007, Appellant filed his opening brief, asserting two issues on appeal: (1) the bankruptcy court erred in approving the Settlement because it violates state law; and (2) the Settlement is unenforceable as an "illegal preference to [Appellee]." (Appellant's Br. at 10–15.) On the same day, Appellant also filed a motion to take judicial notice of the State Injunction. (Mot. for Judicial Notice [filed Feb. 6, 2007].) On February 9, 2007, Judge John L. Kane — who was then presiding over the appeal — issued an order taking judicial notice of the State Injunction. (Order for Judicial Notice [filed Feb. 9, 2007].) On March 26, 2007, Appellee filed his response. (Appellee's Br. [sic] [filed Mar. 26, 2007] [hereinafter "Appellee's Resp."].) On April 10, 2007, Appellant filed his reply. (Appellant's Reply Br. [filed Apr. 10, 2007] [hereinafter "Appellant's Reply"].)

**ANALYSIS**

***1. Legal Standard***

On a bankruptcy appeal, the district court is to review the bankruptcy court's conclusions of law *de novo*. *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399 (10th Cir. 1986); *Lacy v. Stinky Love, Inc. (In re Lacy)*, 304 B.R. 439, 443 (D. Colo. 2004). The district court defers to the bankruptcy court's findings regarding the fundamental facts, reviewing them under a clearly erroneous standard. FED. R. BANKR. P. 8013 (2007); *Sender v. The Bronze Group, Ltd. (In re Hedged-Investments Assoc., Inc.)*, 380 F.3d 1292, 1297 (10th Cir. 2004).

***2. Evaluation***

Appellant's brief offers long discussions of various cases and practically no discussion of how those cases might apply to his appeal. (*See* Appellant's Br. at 10–15.) This unusual approach makes it difficult to ascertain what errors Appellant asserts the bankruptcy court committed. (*See id.*) Careful review of Appellant's brief appears to disclose that he makes the following assignments of error: (1) the bankruptcy court erred in determinating that Appellant failed to present sufficient evidence that Debtor dominated and controlled RPS; and (2) the bankruptcy court's approval of the Settlement constituted an abuse of discretion because the court failed to consider whether the agreement was collusive, the result of unequal bargaining, an unjust preference over other creditors of RPS, enforceable under Colorado law, or violative of the State Injunction. (*Id.*) I consider each argument in turn.

***a. The Bankruptcy Court's Factual Findings***

First, Appellant points to the allegation in Appellee's adversary complaint asserting that RPS was an "insider" of Debtor as the term is defined in the bankruptcy code. (*Id.* at 13.) Relying on non-binding case law, Appellant then argues that this allegation is binding on Appellee. (*Id.* at 13–14.) Next, after meandering into a discussion of whether RPS was entitled to enter into the Settlement, Appellant wanders back to his insider argument and asserts that the bankruptcy court "abused its discretion of [sic] finding insufficient evidence had been presented of the insider relationship between RPS and [Debtor] based solely on the disputed effect of the [v]oting [t]rust [document] and without recognition of the binding judicial admission of insider status on [Appellee]." (*Id.* at 14.) In response, Appellee asserts that even if RPS was an "insider" as defined in the bankruptcy code, Appellant cannot use such insider status as a proxy for a finding that Debtor was an "alter ego" of RPS. (Appellee's Resp. at 18.) Appellee further notes that Appellant failed to offer the voting trust document into evidence. (*Id.*) Consequently, argues Appellee, the bankruptcy court did not err in determining that Appellant's "alter ego" theory was unsupported by the evidence presented. (*Id.*)

The Tenth Circuit has found that where the same person dominated and controlled two legally separate entities that were "interlocked and interwoven in their general business activities," it was just to disregard their legal separateness and find that one was an "alter ego" of the other. *Fitzgerald v. Cent. Bank & Trust Co.*, 257 F.2d 118, 121 (10th Cir. 1958); *accord* 18 AM. JUR. 2D CORPORATIONS § 52 (West 2007) (stating "a corporate entity may be disregarded where there is such unity of interest and ownership that the separate personalities of the corporation and the

individual no longer exist and where, if the acts are treated as those of the corporation alone, an inequitable result will follow"). For the reasons set forth below, I find that the bankruptcy court's determination that Appellant failed to marshal evidence in support of his alter ego theory was not clearly erroneous.

I first address Appellant's argument concerning the binding nature of the allegations in the adversary complaint. (Appellant's Br. at 13.) Appellant neglected to argue this point to the bankruptcy court. (*See* R. on Appeal, Docket Nos. 456 [Appellant's Obj.], 526 [Mot. to Compel Production], 534 [Notice of Exhibits and Witnesses], 535 [Notice of Claim Transfers], 537 [Resp. to Mot. to Strike], 639 [11/7/06 Hr'g Tr.].) Significantly, the Tenth Circuit has stated that "[p]ropounding new arguments on appeal in an attempt to prompt [the appellate court] to reverse the trial court undermines important judicial values." *Tele-Commc'ns, Inc. v. C.I.R.*, 104 F.3d 1229, 1233 (10th Cir. 1997). Indeed, "[i]n order to preserve the integrity of the appellate structure, [a court sitting in an appellate capacity] should not be considered a 'second-shot' forum, a forum where secondary, back-up theories may be mounted for the first time." *Id.* (citing *Anschutz Land & Livestock Co., Inc. v. Union Pac. R.R. Co.*, 820 F.2d 338, 344 n.5 [10th Cir. 1987]). Because Appellant failed to raise this argument below, I will not consider it here.

I now proceed to Appellant's contention that the bankruptcy court erred by finding that Appellant failed to prove Debtor dominated and controlled RPS. (Appellant's Br. at 14.) The only evidence presented with respect to this contention was Appellee's testimony regarding the voting trust document — a document that Appellant did not even bother to introduce into evidence. (*See* R. on Appeal, Docket No. 639 [11/7/06 Hr'g Tr.], 540 [11/7/06 Hr'g Minutes].)

Appellee unequivocally testified that "there never was a voting trust for RPS." (*Id.*, Docket No. 639 at 36 [11/7/06 Hr'g Tr.].) Appellant does not point to any evidence contravening Appellee's testimony. (*See* Appellant's Br.; Appellant's Reply.) Consequently, Appellant's assignment of error fails.

***b. The Bankruptcy Court's Approval of the Settlement***

As noted above, Appellant also argues that the bankruptcy court "abused its discretion in approving the Settlement [] without considering whether the agreement was collusive, the result of unequal bargaining, unjust to other creditors or RPS, or even whether [sic] enforceable under Colorado law." (Appellant's Br. at 12.) Appellant further contends that the court abused its discretion by disregarding the State Injunction, which precluded RPS from divesting itself of its assets. (*Id.*) In response, Appellee contends that the bankruptcy court fulfilled its obligation to evaluate the Settlement. (Appellee's Resp. at 13–15.) Appellee further contends that Appellant failed to raise any evidence at the hearing proving that the Settlement violates Colorado law or the State Injunction. (*Id.* at 15–27.)

Federal Rule of Bankruptcy Procedure 9019 provides that a bankruptcy court may approve a compromise or settlement on motion by the trustee and after a hearing. FED. R. BANKR. P. 9019(a) (2007). "The bankruptcy court's decision to approve the settlement . . . must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 891 (10th Cir. 1989) (citing *Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414 [1968]; further citations omitted). "In general, the court must determine whether the settlement is fair and equitable and in the best interests of the estate." *Kaiser Steel*

*Corp. v. Frates (In re Kaiser Steel Corp.),* 105 B.R. 971, 976 (D. Colo. 1989) (citations omitted). This court reviews the bankruptcy court's decision under a clear abuse of discretion standard. *Reiss*, 881 F.2d at 891–92 (citing *Sec. Nat'l Bank v. Turner [In re Ocobock]*, 608 F.2d 1358, 1360 [10th Cir. 1979]). Here, Appellant points to nothing in the record indicating that the Settlement was either "collusive" or the "result of unequal bargaining," so I cannot attribute error to the bankruptcy court for its failure to consider whether the Settlement suffered from such defects. (*See* Appellant's Br.; Appellant's Reply.)

Appellant's further contention that the bankruptcy court failed to consider whether the Settlement was an unjust preference to RPS's other creditors is similarly unfounded. (*See* Appellant's Br. at 12.) Neither the transcript of the hearing nor any of Appellant's submissions to the court reveal any evidence indicating that the Settlement unjustly impacted other creditors of RPS. Although Appellant intimates some sort of nefarious complicity on the part of Appellee — *a court-appointed trustee* — in the continuance of an alleged pre-petition scheme by Debtor to deplete RPS assets, he failed to prove that the Settlement gave the estate anything more than that which it was entitled to recover under the avoidable transfer provisions of the code. *See* 11 U.S.C. §§ 544, 547, 548 (2006). As the bankruptcy court aptly noted: "Simply put, a chapter 11 trustee, when he proceeds under [sections] 544, 547, or 548, represents the interests of creditors, *not the debtor*." (R. on Appeal, Docket No. 568 at 4 [Order] [emphasis added].) If the Settlement did anything, it would seem that it prevented the estate and RPS from wasting resources unnecessarily litigating avoidable transfer claims, thus *preserving* each entity's assets for the benefit of their respective creditors. (*See id.*, Docket No. 568 at 5–6 [Order].)

As a creditor of one of Debtor's creditors, Appellant was himself well-situated to prove to the court any iniquities he would suffer as a result of the Settlement. However, as Appellee aptly notes, Appellant, "for whatever strategic reason, sought admission of almost no evidence at the [h]earing." (Appellee's Resp. at 27.) Absent *evidence* suggesting that the Settlement was "unjust," the bankruptcy court cannot be said to have erroneously approved an unjust settlement.

Appellant further contends that the bankruptcy court failed to consider whether the Settlement was "unenforceable under Colorado law." (Appellant's Br. at 12.) It appears this argument is connected to Appellant's earlier citation to *Weinman v. Hamilton Properties Corp. (In re Hamilton)*, 186 B.R. 991 (Bankr. D. Colo. 1995), a case in which the trustee in bankruptcy advanced a reverse equitable piercing theory in an attempt to reach the assets of a corporation which he alleged to be an alter ego of the debtor. The *Hamilton* court roundly rejected the trustee's reverse piercing theory, noting that such a theory would be unjustly prejudicial to creditors and "nonculpable shareholders." 186 B.R. at 1000. To the extent Appellant argues the bankruptcy court erred because the Settlement constitutes a court-sanctioned reverse piercing of RPS, I flatly reject such an argument as factually unsupported. At the hearing, Appellant presented the bankruptcy court with no evidence suggesting that the Settlement implicated assets that were not susceptible to recovery by the estate under the bankruptcy code. To the extent Appellant argues the bankruptcy court erred because the Settlement was an unenforceable perpetuation of the pre-petition domination and control of RPS by Debtor by means of a voting trust, the argument fails for lack of evidence that any voting trust was ever executed. (*See Analysis* § 2[a], *supra.*)

Finally, I turn to Appellant's contention that the Settlement violated the State Injunction. (*See* Appellant's Br. at 12.) While this contention familiarly lacks a foundation in competent evidence, it nevertheless requires more careful examination, for it would seem that a settlement running contrary to Colorado law might "achieve an unjust result." *See Reiss*, 881 F.2d at 891–92. Affording it a generous construction, Appellant's argument appears to be as follows: (1) the State Injunction barred any transfer of RPS's assets, (2) the Settlement divested RPS of assets, therefore (3) the Settlement violated the State Injunction such that (4) the bankruptcy court's approval of the Settlement constituted an abuse of discretion. (*See* Appellant's Br. at 12, 14.) Appellant's argument falters at the first step.

At the outset, I note Appellant does not argue that the bankruptcy court erred by rejecting his attempt to introduce into evidence an uncertified document purporting to be the State Injunction. (*See id.*) Thus, to the extent Appellant would have this court base a finding of error below on the language of the State Injunction, Appellant is sorely misguided. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (noting that failure to raise issue in an opening appellate brief constitutes waiver of such issue on appeal). Appellant cannot expect this court to step outside of the confines of the record he himself created to reverse the bankruptcy court's well-reasoned opinion based upon that record. *See Tele-Commc'ns, Inc.*, 104 F.3d at 1233.

Moreover, Appellant does not contend he was a party to the State Injunction. Instead, the evidence clearly indicates that the Securities Commissioner of the State of Colorado — *the very party that requested the State Injunction* — was aware of the Settlement and did not oppose it.

(Admin. R., Docket No. 639 at 106–07 [11/7/06 Hr'g Tr.].)[2] Consequently, I reject Appellant's attempt to bootstrap his claims to the State Injunction. If the Settlement was truly contrary to the interests of the Securities Commissioner of the State of Colorado, he would have intervened.

***3. Conclusions***

Based on the foregoing it is therefore

ORDERED that the bankruptcy court's order is AFFIRMED.

Dated this 18th day of July, 2007.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge

---

[2]As the bankruptcy court stated when denying Appellant's motion to stay the Settlement pending the outcome of this appeal:

> The [c]ourt notes that [Appellee] served notice of the Settlement . . . on the Colorado Attorney General, representative of the Commissioner in the state court litigation that produced the [State Injunction]. The [c]ourt further notes that the Attorney General, despite that notice, filed no objection to the Settlement . . . . It was the Commissioner, through the Attorney General, who procured the [State Injunction]. In the normal course of events, the [c]ourt would have expected the Attorney General to have objected if he shared [Appellant's] notion that the Settlement . . . violated the [State Injunction].

(R. on Appeal, Docket No. 708 [Order on Mot. to Stay]; *see* Appellee's Unopposed Mot. to Supplement Designation of the R. [filed Mar. 27, 2007] [requesting to add docket number 708 to the record on appeal].)